

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-26-00096-CV

---

**IN RE ESTATE OF SHERRI MICHELE GILLETTE, DECEASED**

---

On Appeal from the County Court at Law No. 1
Potter County, Texas
Trial Court No. 113491-1-CV, Honorable Walton Weaver, Presiding

---

August 12, 2026

## MEMORANDUM OPINION

Before PARKER, C.J., and DOSS, J., and QUINN, S.J.[1]

We have before us an appeal from a final summary judgment. Consideration of the appellate record and parties' briefs leads us to reverse. Simply put, the summary judgment movant, Dwayne Herring, as Dependent Administrator of the testamentary Estate of Sherri Michele Gillette, did not prove an entitlement to summary judgment as a matter of law.

---

[1] Brian Quinn, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

***Background***

The appellate record reveals circumstances entailing an unadjudicated divorce, a murder, and the probate of the victim's will. The victim, Sherri Michele Gillette, sought to divorce her husband, Paul Gillette. Yet, Paul murdered her in 2010, before finalization of the divorce. That resulted in Sherri's father, Dwyane Herring, pursing the probate of his daughter's estate in the Potter County Court. He secured the appointment as the estate's administrator in September of 2010.

Approximately 13 years later, Dwayne sued Paul in the 251st Judicial District Court even though the Potter County Court probate remained pending. Relief consisted of obtaining various declarations as well as a constructive trust. The desired declarations included findings that 1) Paul was a beneficiary under the will, 2) the children of the marriage were contingent beneficiaries, and 3) Paul's murder of Sherri resulted in the forfeiture of his bequest from Sherri. If those declarations were made, then Sherri's estate should be placed in a constructive trust for the benefit of the children, or so Dwayne pleaded.

Paul, acting pro se, answered and counterclaimed. Among other things, he ultimately sought 1) the removal of Dwayne as administrator due to mismanagement, conflict of interest, and breached fiduciary duty, 2) damages, 3) an accounting of the estate and his community interest therein, 4) nullification of Sherri's Will, and 5) nullification of an agreement between he and Sherri regarding an asset within Sherri's estate.

2

The district court disposed of the suit via two summary judgments. Dwayne moved for and successfully received both summary judgments. In short, the district court granted Dwayne what he sought and denied Paul what he desired.

Having lost in the district court, Paul, again pro se, turned to the Potter County Court and the pending probate of Sherri's estate therein. Through several pleadings or documents, he asked for relief against Dwayne similar, if not identical, to that pursued in and rejected by the district court. That spawned Dwayne to move for summary judgment on the basis of res judicata. Allegedly, the 251st District Court earlier disposed of the very claims Paul sought in the Potter County Court probate, and those final judgments barred Paul's recovery. After the contested proceeding was transferred by the Potter County Court to the Potter County Court at Law No. 1 for disposition, the latter granted Dwayne's summary judgment motion and entered judgment denying Paul relief. This appeal ensued.

### Discussion

Several grounds for reversal pend for review. We need only consider the first since it is dispositive. Through it, Paul contends that Dwayne failed to carry his summary judgment burden to establish, as a matter of law, an element of res judicata. We sustain the issue.

Res judicata prevents the relitigation of previously resolved claims or claims which should have been litigated in an earlier suit. *Belay v. Wells Fargo Bank, N.A.*, No. 07-19-00206-CV, 2020 Tex. App. LEXIS 5514, at *7–8 (Tex. App.—Amarillo July 16, 2020, no pet.) (mem. op.). The affirmative defense, *see Kothmann v. Cook*, 113 S.W.3d 471, 474 (Tex. App.—Amarillo 2003, no pet.) (categorizing res judicata as an affirmative defense),

3

consists of several elements.  The element in play here is that requiring the prior judgment to have been rendered by a court of competent jurisdiction.  *See Belay*, 2020 Tex. App. LEXIS 5514, at *7–8 (identifying the elements of res judicata as including proof that the prior judgment was issued by a court of competent jurisdiction).  That is, the court rendering the earlier judgment must have had subject matter jurisdiction to adjudicate the claims before it.  *Williams v. National Mortgage Co*., 903 S.W.2d 398, 402 (Tex. App.—Dallas 1995, no pet.).  Without such jurisdiction, its judgment poses no bar.  *Id.*, *accord Stedfast Baptist Church v. Fellowship of the Sword, Inc*., No. 02-21-00436-CV, 2022 Tex. App. LEXIS 7789, at *32 (Tex. App.—Fort Worth Oct. 20, 2022, no pet.) (mem. op.) (quoting *Lopez v. Sulak*, 76 S.W.3d 597 (Tex. App.—Corpus Christi—Edinburg 2002, no pet.) (stating that "'a claim is not barred by res judicata if the court rendering judgment in the initial suit lacked subject[ ]matter jurisdiction over the claim'")).

Res judicata being an affirmative defense, the summary judgment burden fell on Dwayne to establish each of its elements as a matter of law.  *First Sabrepoint Cap. Mgmt., L.P. v. Farmland Partners Inc*., 712 S.W3d 75, 84–85 (Tex. 2025).  Thus, he had to prove the 251st District Court had jurisdiction to adjudicate each claim before it.  His effort to satisfy that burden consisted of urging several arguments.

The first consisted of alleging that the Declaratory Judgment Act, TEX. CIV. PRAC. & REM. § 37.001 *et seq.*, granted courts subject matter jurisdiction to issue declaratory judgments.  He was mistaken.  The statute authorizes the rendition of declaratory judgments; it does not create jurisdiction, however.  *Jessep v. Potter County Cmty. Supervision & Corr. Dep't*, No. 07-13-00266-CV, 2015 Tex. App. LEXIS 6349, at *9 (Tex. App.—Amarillo June 23, 2015, no pet.) (mem. op.).  Rather, the statute provides a

4

"procedural device for deciding cases already within a court's jurisdiction." *Id.* So, contrary to Dwayne's belief, jurisdiction must derive from a source other than the Declaratory Judgment Act.

The alternative source, Dwayne suggested, was the presumption that Texas district courts enjoy general jurisdiction over all matters. That argument similarly falls short given the current status of the law.

True . . . district courts being courts of general jurisdiction are presumed to have subject matter jurisdiction over disputes absent a showing to the contrary. *In re Centerpoint Energy Houston Elec., LLC*, 629 S.W.3d 149, 154 (Tex. 2021). But, the key component here is "absent a showing to the contrary." In other words, the presumption is rebutted when the legislature vests in other courts or governmental bodies either exclusive, appellate or "original" jurisdiction over particular matters. Tex. Const. art. V, § 8 (stating that "[d]istrict Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body"). The Supreme Court acknowledged as much in *Centerpoint*, 629 S.W.3d at 154, just as it did years earlier when saying that "all claims are presumed to fall within the jurisdiction of the district court unless the Legislature . . . ***has provided that they must be heard elsewhere***." *S.C. v. M.B*, 650 S.W.3d 428, 436 (Tex. 2022) (quoting *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000) (emphasis added). *See also Abel v. Morgan*, No. 05-24-00349-CV, 2024 Tex. App. LEXIS 8517, at *4 (Tex. App.—Dallas Dec. 9, 2024, no pet.) (mem. op.) (same). It is not necessary that certain buzzwords be included in the statute to rebut the presumption, so

5

long as the statutory words evince a clear intent to do so. *S.C.*, 650 S.W.3d at 436, (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384 (Tex. 2014) (stating that "[s]uch limitations need not be express, but '[w]e resist classifying a provision as jurisdictional absent clear legislative intent to that effect'" and the jurisdictional condition must be clear)). That is the circumstance here, as we now explain.

Among other things, Dwayne attacked Paul's status as a beneficiary under Sherri's Will in the 251st District Court. Also before the district court was his request to construct or interpret Sherri's Will. In turn, Paul counterclaimed for a judgment vitiating Sherri's will, removing Dwayne as administrator, recovering his interest in purported community property entwined in Sherri's estate, and granting redress against the estate's administrator. No doubt, each chose-in-action involved Sherri's Will, its probate, the identity of beneficiaries thereunder, or the administration of her estate. Furthermore, the Potter County Court administration remained open when Dwayne sued elsewhere. This is of import for the Texas Estates Code states that: "[a]ll probate proceedings **must be filed and heard** in a court exercising original probate jurisdiction." TEX. ESTATES CODE § 32.001(a). "Must" denotes a mandatory condition. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *In re City of Houston*, No. 01-24-00629-CV, 2024 Tex. App. LEXIS 8098, at *10–11 (Tex. App.—Houston [1st Dist.] Nov. 21, 2024, no pet.) (mem. op.) (same). *See also City of Madisonville v. Sims*, 620 S.W.3d 375, 379 (Tex. 2020) (stating that "[t]he term 'must' creates a condition precedent" and "[t]he ninety-day filing deadline [in the Whistleblower Act] is thus a jurisdictional statutory prerequisite to suit . . . ."). If a "probate proceeding" "must be filed and heard" in a "court exercising original probate jurisdiction" and *Dubai* and *Sims* mean what they said, then the

6

presumption of jurisdiction laying with district courts fails unless they exercise "original probate jurisdiction." Whether district courts exercise "original probate jurisdiction" over "probate proceedings" raises two additional questions.

One concerns what is meant by "a probate proceeding," while another involves the identity of "court[s] exercising original probate jurisdiction." We first answer the latter. The Estates Code creates a statutory scheme governing the disposition of a decedent's estate. Under the moniker "Original Jurisdiction for Probate Proceedings," the Legislature expressly identified the courts it selected to exercise such jurisdiction under its statutory scheme. For counties "in which there is no statutory probate court or county court at law exercising original probate jurisdiction, the county court has original jurisdiction of probate proceedings." TEX. ESTATES CODE § 32.002(a). For counties lacking a statutory probate court but having a county court at law "exercising original probate jurisdiction, the county court at law exercising original probate jurisdiction and the county court have concurrent original jurisdiction of probate proceedings, unless otherwise provided by law." *Id.* at § 32.002(b). Should the county have a statutory probate court, then "the statutory probate court has original jurisdiction of probate proceedings." *Id.* at § 32.002(c). So, we encounter three kinds of court the Legislature specifically vested with "original jurisdiction over probate courts"; none are Texas district courts. Furthermore, our search uncovered no other provision of the Estates Code classifying a district court as a court exercising "original jurisdiction of probate matters." And though statute permits the transfer of contested probate matters to district courts, *see e.g.*, TEX. ESTATES CODE § 32.003(a)(2), the latter's authority to act arises from the transfer, which never occurred here.[2]

---

[2] In a sense, the district court's jurisdiction is derivative of the transferring court, as opposed to original. And, that the Legislature specified when a district court may entertain a probate proceeding, *see*

7

Now, that leads us to the first question regarding the nature of the claims asserted by Dwayne and Paul. Were they "probate proceedings"? That category of proceedings finds definition in the Estates Code, as well. They include, among other things, 1) the probate of a will, TEX. ESTATES CODE § 31.001(1), 2) both the determination of heirship and administration of community property, *id.* at § 31.001(3), 3) claims arising from an estate's administration and actions brought on those claims, *id.* at § 31.001(5), 4) any matter related to the settlement, partition, or distribution of an estate, *id.* at § 31.001(6), and 5) the construction of a will, *id.* at § 31.001(7). Harkening back to the claims of Dwayne and Paul as described earlier, it takes little effort to see how each fits within the scope of "probate proceedings."

In short, the factual pieces to the jurisdictional puzzle created in § 32.001(a) contradict the notion that Dwayne proved, as a matter of law, the 251st District Court's jurisdictional authority to resolve all the parties' respective claims. To reiterate the terms of our Texas Constitution, district courts have jurisdiction over all disputes "except in cases where exclusive, appellate, **or original jurisdiction** may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. V, § 8. The Legislature, via statute, clearly and expressly created the statutory means by which to dispose of a decedent's property. It not only expressly defined "probate proceedings" but also identified the three categories of courts which it expressly vested with "original probate jurisdiction."

---

ESTATES CODE §§ 32.003(a)(2), and the extent of its jurisdiction upon receiving that transfer, *e.g. id.* § 32.003(f), is telling. If a district court exercised original jurisdiction over probate proceedings via its presumptive jurisdiction, then there would be no reason for the legislature to enact § 32.003(a)(2) and § 32.003(f) as a means for specifying when they can act and the extent of their authority. The court could simply act per its presumptive jurisdiction and the scope it allowed.

8

None of those categories include a district court. Moreover, the Legislature clearly specified that those "probate proceedings" "must be filed and heard" in a court "exercising original probate jurisdiction," which a district court does not exercise under the expressed statutory scheme. Thus, we cannot but conclude that the verbiage of § 32.001(a) of the Estates Code triggers the exception found in article V, § 8 of the Constitution regarding the limitation of a district court's plenary and presumptive jurisdiction. So, Dwayne did not prove, as a matter of law, that the 251st District Court had jurisdiction to issue the final judgments upon which he based his claim of res judicata.

In arriving at our conclusion, we do not ignore Dwayne's reference to *In re Puig*, 351 S.W.3d 301 (Tex. 2011) and authorities from sister courts of appeal. *Puig* involved competing proceedings in a Fort Bend county court at law exercising probate jurisdiction and a separate lawsuit initiated in a Webb County district court. The Webb County suit, filed after the Fort Bend probate began, involved title to realty held in the estate undergoing probate. The Supreme Court concluded that both courts enjoyed concurrent jurisdiction over the controversy, though dominant jurisdiction lay with the Fort Bend court. *Puig*, 351 S.W.3d at 305. Yet, the controlling statutes were those in existence before the 2009 enactment of the Estates Code, which the court noted. *Id.* at 304, n.1. This is noteworthy because matters of probate jurisdiction generally are determined under the law existing when the estate opened. *A.H. Farms LLC v. Star Creek Co.*, No. 06-22-00081-CV, 2023 Tex. App. LEXIS 5716, at *13 (Tex. App.—Texarkana Aug. 2, 2023, pet. denied) (mem. op.). So, *Puig*'s application of repealed statutes (*e.g.* §§ 4, 5, and 5A of the Probate Code) does not necessarily control the outcome here. This is especially so when, as here, the old and new statutes differ.

9

For instance, § 32.001 substituted the word "must" for "shall." That is, the new provision says probate proceedings "must be filed and heard" by a court "exercising original probate jurisdiction." *Id.* On the other hand, its predecessor utilized the word "shall" and identified particular courts assigned the task of adjudicating matters "regarding probate and administrations." *See e.g.*, TEX. PROBATE CODE § 5(b), (c) & (d) (repealed). As said earlier, "must" denotes a "condition," such as a condition to lawfully adjudicating a "probate proceeding."[3] It also replaces the word "shall," which some have described "as having no truly reliable meaning." *In J.L.W.,* 919 S.W.2d 841, 844 (Tex. App.—El Paso 1996, no writ) (Barajas concurring). Furthermore, utilizing the phrase "exercising original probate jurisdiction" to describe the entity capable of considering "probate proceedings" (as in § 32.001(a)) as opposed to naming a particular level of court (repealed TEXAS PROBATE CODE § 5) has another effect. It illustrates legislative intent to have "probate proceedings" resolved by a court enjoying a specific type of jurisdiction.

Also of note in § 32.001 but missing from repealed sections 4, 5, and 5A of the Probate Code is the legislative classification assigned probate matters. Per subsection (d) of § 32.001, "[t]he administration of the estate of a decedent, from the filing of the application for probate and administration, or for administration, until the decree of final distribution and the discharge of the last personal representative, shall be considered ***as one proceeding for purposes of jurisdiction***. The entire proceeding is a proceeding in rem." TEX. ESTATES CODE § 32.001(d) (emphasis added). Coincidentally, we earlier had occasion to construe, in *Wood v. Dalhart R&R Mach. Works, Inc.*, 259 S.W.3d 229

---

[3] And, in a setting where statute creates the remedy, "must" has been construed as a condition limiting the exercise of jurisdiction. *See Sims*, 620 S.W.3d at 379 (stating that "[t]he term 'must' creates a condition precedent" and "[t]he ninety-day filing deadline [in the Whistleblower Act] is thus a jurisdictional statutory prerequisite to suit . . . .").

(Tex. App.—Amarillo 2008, no pet.), the jurisdictional effect of a rather identical clause found elsewhere in the old Probate Code.

*Wood* involved a corporation's effort to value and secure the return of corporate stock owned by Brenda Wood. *Id.* at 229–30. The latter happened to be the ward in a guardianship ordered by the Lubbock County Court. *Id.* at 230. After the enactment of that proceeding, Dalhart R & R Machine Works commenced an action in Dallam County to adjudicate the stock's value and obtain its return. *Id.* Wood's guardian moved to dismiss the Dallam County suit for want of jurisdiction. *Id.* The trial court denied the motion, and the issue of jurisdiction fell upon this court's lap. *Id.*

In ultimately holding that the Dallam County trial court lacked jurisdiction, we discussed the similarity between the statutory provisions controlling guardianships and probate matters. *Id.* at 231. Our attention eventually turned to the language of § 604. Section 604 provided that: "[f]rom the filing of the application for the appointment of a guardian of the estate or person, or both, until the guardianship is settled and closed under this chapter, the administration of the estate of a minor or other incapacitated person is **one proceeding for purposes of jurisdiction** and is a proceeding in rem." TEX. PROB. CODE § 604 (emphasis added). Due to that statutory language, we found it "difficult to read [§ 604] . . . as suggesting something other than that the court in which the guardianship [was] initiated acquire[d] **exclusive** jurisdiction over the estate and issues relating to its administration." *Id.* at 232 (emphasis added). And, asserting claims against the estate certainly related to its administration, or so our analysis led us to conclude.

11

No less is true about Dwayne's attempt to deny Paul an interest in Sherri's testamentary estate or Paul attempting to vitiate Sherri's will and remove Dwayne as administrator. Each implicates the estate, its administration, and its disposition. And, no one can reasonably deny the similarity between the words of § 604 and those of § 32.001(d). Both purport to envelope their subject proceedings from beginning to end. Both categorize the entire enveloped proceeding, from beginning to end, as "one . . . **for purposes of jurisdiction.**" And, both classify the enveloped proceeding as a "proceeding[] in rem." Given these similarities, we find it difficult to read § 32.001(a) as intending something other than that the court in which the probate was initiated acquires "exclusive jurisdiction" over the estate and issues relating to its administration, unless transferred to another court for disposition under the Estates Code.

One other point. It concerns the Supreme Court's own characterization of § 32.001(a) in *Centerpoint*. There, the court noted that the plaintiff alluded to certain Estate Code provisions creating "exclusive jurisdiction." *Centerpoint*, 629 S.W.3d at 155. The Supreme Court's example of one such provision was § 32.001(a) of the Estates Code, the very provision at issue here. *See Centerpoint*, 629 S.W.3d at 155 (stating that "[p]laintiffs point to several Estates Code provisions that confer exclusive original jurisdiction on probate courts. For example, '[a]ll probate proceedings must be filed and heard in a court exercising original probate jurisdiction,' TEX. EST[ATES] CODE § 32.001(a) . . . ."). That is another reason why we find *Puig* inapposite, as well as two intermediate court opinions cited by Dwayne.

The two intermediate court opinions are *Whitener v. Origin Bank*, No. 14-22-00235-CV, 2023 Tex. App. LEXIS 598 (Tex. App.—Houston [14th Dist.] Jan. 31, 2023,

12

no pet.) (mem. op.) and *Carson v. Junior*, No. 14-23-00050-CV, 2024 Tex. App. LEXIS 5987 (Tex. App.—Houston [14th Dist.] Aug. 20, 2024, no pet.) (mem. op.). Neither court discussed the language of § 32.001(a). Neither considered § 32.001(d) or how it makes probates in rem proceedings from start to end for jurisdictional purposes. And, neither were issued subsequent to *Centerpoint* and its allusion to § 32.001(a) placing exclusive jurisdiction in "courts exercising original probate jurisdiction." Moreover, like *Puig*, both seemingly depend on a faulty premise. The premise of which we speak begins with the hypothesis that because a constitutional county court, county court at law, and statutory county court all exercise original probate jurisdiction under certain circumstances, their jurisdiction over probate proceedings is concurrent. The premise becomes faulty when *Puig, Whitener*, and *Carson* fail to explain how the fact that those three courts may exercise concurrent jurisdiction over probate proceedings allows a district court to exercise the same jurisdiction. Again, the legislature described a category of courts exercising original probate jurisdiction, and district courts are not within that statutory description.

In sum, Dwayne failed to establish, as a matter of law, an element to his claim of res judicata. He failed to prove that the 251st had jurisdiction to render the summary judgments purporting to bar Paul from continuing his action in the Potter County Court at Law No. 1. Given that, we reverse the latter's judgment and remand the cause for further action. However, our action should not be construed as an order voiding the 251st's judgment. No one below moved for such relief.

Brian Quinn
Senior Justice

13